256 F.3d 864 (9th Cir. 2001)
 MICHELLE NICHOLS, AN INDIVIDUAL; ANTONIO SANCHEZ, AN INDIVIDUAL; ANNA CHRISTINE LIZARRAGA, AN INDIVIDUAL, PLAINTIFFS-APPELLANTS,
v.
AZTECA RESTAURANT ENTERPRISES, INC., A CORPORATION, DEFENDANT-APPELLEE
 No. 99-35579
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 16, 2001
Filed July 16, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 Kathleen Phair Barnard, Schwerin Campbell Barnard, Llp, Seattle, Washington, for the plaintiffs-appellants.
 Rex Darrell Berry, Davis, Grimm & Payne, Seattle, Washington, for the defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington; Jack D. Shanstrom, District Judge, Presiding. D.C. No. CV-96-10870-JDS.
 Before: Stephen Reinhardt, Kim McLane Wardlaw, and Ronald M. Gould, Circuit Judges.
 Opinion by Judge RONALD M. GOULD; Concurrence and Partial Dissent by Judge WARDLAW.
 RONALD M. GOULD, Circuit Judge:
 
 
 1
 Antonio Sanchez[1] brought this action against his former employer, Azteca Restaurant Enterprises, Inc., alleging, among other claims, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and its state law counterpart, the Washington Law Against Discrimination ("WLAD"). Sanchez claimed that he was verbally harassed by some male co-workers and a supervisor because he was effeminate and did not meet their views of a male stereotype. Sanchez further asserted that he was terminated in retaliation for opposing the harassment. Following a bench trial, the district court entered judgment in favor of Azteca on all claims.
 
 
 2
 On appeal, Sanchez challenges the district court's factual findings and legal conclusions regarding the existence of a hostile work environment; Azteca's liability for the alleged harassment; and the alleged retaliatory discharge.[2] He also appeals two evidentiary rulings.
 
 
 3
 We agree with Sanchez that the behavior of his co-workers and supervisor violated Title VII and WLAD. We further agree that Azteca failed to take adequate steps to remedy the harassment. We therefore reverse the judgment of the district court with respect to Sanchez's hostile work environment claim, and remand for further proceedings consistent with our opinion. We affirm the judgment of the district court with respect to Sanchez's retaliation claim.
 
 I.
 
 4
 Azteca operates a chain of restaurants in Washington and Oregon. It employed Sanchez from October 1991 to July 1995. Sanchez at first worked as a host in Azteca's Burien restaurant, and later worked as a food server at the Southcenter restaurant.
 
 
 5
 Throughout his tenure at Azteca, Sanchez was subjected to a relentless campaign of insults, name-calling, and vulgarities. Male co-workers and a supervisor repeatedly referred to Sanchez in Spanish and English as "she" and "her." Male coworkers mocked Sanchez for walking and carrying his serving tray "like a woman," and taunted him in Spanish and English as, among other things, a "faggot" and a "fucking female whore." The remarks were not stray or isolated. Rather, the abuse occurred at least once a week and often several times a day.
 
 
 6
 This conduct violated company policy. Since 1989, Azteca has expressly prohibited sexual harassment and retaliation and has directed its employees to bring complaints regarding such conduct directly to the attention of the corporate office. Azteca's most recent antiharassment policy, established in 1993, states:
 
 
 7
 [A]n employee who believes that he or she has been harassed by a co-worker, supervisor or anyone acting on behalf of the company should immediately report the facts of the incident to [name omitted], Azteca EEO Officer, at the corporate office [telephone number omitted], or to _______, the "Local Contact" who is the Area Manager responsible for this restaurant.[3]
 
 
 8
 Upon receipt of a complaint, Azteca's policy is to conduct a thorough investigation, the results of which are reviewed by the company's EEO Board, which is then responsible for implementing an appropriate remedy.
 
 
 9
 In addition to this policy, Azteca has a bilingual (English and Spanish) training program about sexual harassment. This training, which all employees attend when hired, and annually thereafter, defines sexual harassment and instructs employees how to report complaints.
 
 
 10
 Sanchez attended Azteca's sexual harassment training and was familiar with the company's antiharassment policy and reporting procedures. Yet he never complained to the corporate EEO officer or the area manager about the harassment he experienced, as required by the corporate policy. This is not to say, however, that Sanchez ignored the harassment. Indeed, the general manager of the Southcenter restaurant (the "Southcenter general manager") testified that Sanchez complained about being called names, and an assistant manager testified that Sanchez made similar complaints to him. Moreover, in May 1995, Sanchez reported and described the specifics of the harassment to Azteca's human resources director, Arnie Serna. Sanchez made his complaint during a meeting that had been convened to address a fight between Sanchez and a co-worker. Sanchez, Serna, and the Southcenter general manager were present. During the meeting, Sanchez told Serna that he had complained to the Southcenter general manager many times, and expressed concern that the harassment would continue to be ignored.
 
 
 11
 In response, Serna proposed the following solution: (1) Sanchez was to report any further harassment to the Southcenter general manager, who promised to address the issue; and (2) Serna was to follow up with "spot checks " over a twoweek period to ensure that the harassment would stop. During the four or five spot checks that followed, Serna spoke with Sanchez only once and was told that conditions were improving. Serna replied that if the situation took a turn for the worse, Sanchez should tell the Southcenter general manager or call Serna directly. Sanchez made no further complaints.
 
 
 12
 On July 29, 1995, a couple of months after his meeting with Serna, Sanchez became involved in a heated argument with an assistant manager, and walked off the job. He was fired for leaving work in the middle of his shift. A month later, Sanchez filed a charge of discrimination with the EEOC. Thereafter, he initiated this lawsuit.
 
 
 13
 Following a bench trial, the district court concluded that Sanchez had not been subjected to a hostile environment. Stating that it gave "greater credibility to the defense witnesses and their testimony," the court concluded that Sanchez's workplace had been neither objectively nor subjectively hostile, and that the alleged harassment did not take place "because of sex." The court further concluded that there had been no retaliation because Sanchez had not engaged in any protected activity and, in any event, had failed to establish a causal link between protected activity and his termination. Sanchez timely appealed.
 
 II.
 
 14
 The district court's conclusions that Sanchez failed to establish his sexual harassment and retaliation claims present mixed questions of law and fact which we review de novo. Intlekofer v. Turnage, 973 F.2d 773, 777 (9th Cir. 1992); Jordan v. Clark, 847 F.2d 1368, 1375 (9th Cir. 1988). We review the district court's factual findings for clear error, Ellison v. Brady, 924 F.2d 872, 876 (9th Cir. 1991), and will not reverse if such findings are "plausible in light of the record viewed in its entirety." United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997). Where, as here, the factual findings rest on credibility determinations, we give them "even greater deference." Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985).
 
 III.
 
 15
 Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. §§ 2000e-2(a)(1). It is by now clear that sexual harassment in the form of a hostile work environment constitutes sex discrimination. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); see also Schonauer v. DCR Enter., Inc., 905 P.2d 392, 399 (Wash. Ct. App. 1995).
 
 
 16
 To prevail on his hostile environment claim, Sanchez was required to establish a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment." Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998) (citing Meritor, 477 U.S. at 66-67); see also Schonauer, 905 P.2d at 400. To satisfy this requirement, Sanchez needed to prove that his workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).[4] In addition, Sanchez was required to prove that any harassment took place "because of sex." Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 79 (1998); Schonauer, 905 P.2d at 400.
 
 
 17
 The district court ruled against Sanchez on each of these elements, concluding that: (1) Sanchez's workplace was not objectively hostile; (2) Sanchez did not perceive his workplace to be hostile; and (3) the alleged conduct did not occur because of sex. We disagree with each of these conclusions and, where applicable, the clearly erroneous findings upon which they are based.
 
 A. Objectively Hostile Environment
 
 18
 To determine if an environment is sufficiently hostile or abusive to violate Title VII, we look at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The required level of severity or seriousness "varies inversely with the pervasiveness or frequency of the conduct. " Ellison, 924 F.2d at 878. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal quotation marks and citations omitted).
 
 
 19
 The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering `all the circumstances.' " Oncale, 523 U.S. at 81-82 (the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed"). Consistent with our holding in Ellison, we analyze objective hostility in this case from the perspective of a "reasonable man." 924 F.2d at 879 n.11.
 
 
 20
 At trial, Sanchez testified that he endured an unrelenting barrage of verbal abuse while employed at Azteca. Specifically, Sanchez testified that other Azteca employees habitually called him sexually derogatory names, referred to him with the female gender, and taunted him for behaving like a woman. Although the district court failed to indicate whether it believed this testimony, no witness -including the supervisor accused of participating in the harassment -testified to the contrary.[5] Moreover, the district court's factual finding that "Sanchez was teased on occasion" suggests that the court believed the conduct took place, but did not view it to be serious or actionable.
 
 
 21
 Having reviewed the record, we hold that a reasonable man would have found the sustained campaign of taunts, directed at Sanchez and designed to humiliate and anger him, sufficiently severe and pervasive to alter the terms and conditions of his employment. Indeed, even Azteca does not contend otherwise on appeal.
 
 B. Subjectively Hostile Environment
 
 22
 Assuming that a reasonable person would find a workplace hostile, if the victim "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris, 510 U.S. at 21-22. We must determine whether Sanchez, by his conduct, indicated that the alleged harassment was "unwelcome." Meritor, 477 U.S. at 68; see also Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995); Schonauer, 905 P.2d at 399.
 
 
 23
 The district court concluded that the frequent verbal abuse was not unwelcome. Although the court made no factual finding directly on point, its determination may have been influenced by its findings that: (1) Sanchez made no complaint of sexual harassment to Serna, or anyone else from the corporate office; (2) Sanchez never sought mental health treatment; and (3) Sanchez engaged in horseplay with his male co-workers. We see the evidence another way.
 
 
 24
 The first of these findings by the district court, which forms the crux of Azteca's appeal, is clearly erroneous. It is undisputed that in May 1995 Sanchez told Serna, in considerable detail, about the fact and nature of the verbal abuse.[6] Sanchez also complained to the Southcenter general manager and an assistant manager, though in less detail. It was clearly erroneous to find, as did the district court, that Sanchez had not complained about his harassment. That Sanchez complained about the frequent, degrading verbal abuse supports our conclusion that the conduct was unwelcome, as does Sanchez's unrebutted testimony to that effect. We hold that Sanchez perceived his workplace to be hostile.
 
 
 25
 Nor do the other potentially relevant findings noted above -that Sanchez never sought mental health treatment, and that he engaged in horseplay with some of his harassers --warrant a different result. As to the first, the scope of Title VII is not limited to conduct that affects a victim's psychological well-being. Harris, 510 U.S. at 22; Ellison, 924 F.2d at 878 ("Title VII's protection of employees . . . comes into play long before the point where victims of sexual harassment require psychiatric assistance"). As to the second, the fact that not all of Sanchez's interactions with his harassers were hostile does not mean that none of them was. As any sensible person would, Sanchez drew a distinction between conduct he perceived to be objectionable, and conduct that was not. He viewed horseplay as "male bonding" and excluded it from his hostile environment claim; he viewed relentless verbal affronts as sexual harassment, and sought legal recourse for that conduct. And, in complaining to Serna about the verbal abuse, he demonstrated a subjective belief that he was being harassed.
 
 C. Because of Sex
 
 26
 Sexual harassment is actionable under Title VII to the extent it occurs "because of" the plaintiff's sex. Oncale, 523 U.S. at 79; see also Schonauer, 905 P.2d at 400. Sanchez asserts that the verbal abuse at issue was based upon the perception that he is effeminate and, therefore, occurred because of sex. In short, Sanchez contends that he was harassed because he failed to conform to a male stereotype.
 
 
 27
 Sanchez's theory derives from Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), in which the Supreme Court held that a woman who was denied partnership in an accounting firm because she did not match a sex stereotype had an actionable claim under Title VII. Hopkins, the plaintiff in Price Waterhouse, was described by various partners as "macho," in need of "a course in charm school," "a lady using foul language," and someone who had been "a tough-talking somewhat masculine hard-nosed manager." Id. at 235, 109 S.Ct.1775. Hopkins was advised that she could improve her partnership chances if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. (internal quotation marks omitted). Writing for the plurality, Justice Brennan held that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 250, 109 S.Ct.1775; see also id. at 272-73, 109 S.Ct.1775 (O'Connor, J., concurring in the judgment) (characterizing "failure to conform to[sex] stereotypes" as criterion of discrimination).
 
 
 28
 Sanchez contends that the holding in Price Waterhouse applies with equal force to a man who is discriminated against for acting too feminine. We agree. See Oncale , 523 U.S. at 78 ("Title VII's prohibition of discrimination `because of . . . sex' protects men as well as women."); see also Schwenk v. Hartford, 204 F.3d 1187, 1202 (9th Cir. 2000) (comparing the scope of the Gender Motivated Violence Act with the scope of Title VII, which forbids "[d]iscrimination because one fails to act in the way expected of a man or woman"); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261 n.4 (1st Cir. 1999) ("[J]ust as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity.") (citing Price Waterhouse , 490 U.S. at 250-51).
 
 
 29
 At its essence, the systematic abuse directed at Sanchez reflected a belief that Sanchez did not act as a man should act. Sanchez was attacked for walking and carrying his tray "like a woman" -i.e., for having feminine mannerisms. Sanchez was derided for not having sexual intercourse with a waitress who was his friend. Sanchez's male co-workers and one of his supervisors repeatedly reminded Sanchez that he did not conform to their gender-based stereotypes, referring to him as "she" and "her." And, the most vulgar name-calling directed at Sanchez was cast in female terms. We conclude that this verbal abuse was closely linked to gender.
 
 
 30
 Price Waterhouse sets a rule that bars discrimination on the basis of sex stereotypes. That rule squarely applies to preclude the harassment here.[7] The only potential difficulty arises out of a now faint shadow cast by our decision in DeSantis v. Pacific Telephone & Telegraph Co., Inc., 608 F.2d 327 (9th Cir. 1979). DeSantis holds that discrimination based on a stereotype that a man "should have a virile rather than an effeminate appearance" does not fall within Title VII's purview. Id. at 331-32. This holding, however, predates and conflicts with the Supreme Court's decision in Price Waterhouse . And, in this direct conflict, DeSantis must lose. To the extent it conflicts with Price Waterhouse, as we hold it does, DeSantis is no longer good law. Under Price Waterhouse, Sanchez must prevail.
 
 
 31
 Following Price Waterhouse, we hold that the verbal abuse at issue occurred because of sex.[8] Because we hold that Sanchez has established each element of his hostile environment claim, we further hold that the conduct of Sanchez's coworkers and supervisor constituted actionable harassment under both Title VII and WLAD,[9] and reverse the district court's contrary conclusion.
 
 IV.
 
 32
 Having determined that the conduct of Sanchez's coworkers and supervisor created a hostile environment, we must decide whether Azteca is liable for the harassment. The relevant standards and burdens pertaining to employer liability vary with the circumstances. When harassment by coworkers is at issue, the employer's conduct is reviewed for negligence. See Ellison, 924 F.2d at 881. When harassment by a supervisor is at issue, an employer is vicariously liable, subject to a potential affirmative defense. See Faragher, 524 U.S. at 780.
 
 A. Harassment by Co-Workers
 
 33
 Once an employer knows or should know of [co-worker] harassment, a remedial obligation kicks in." Fuller, 47 F.3d at 1528. An employer is liable for the hostile work environment created by a co-worker unless "the employer . . . take[s] adequate remedial measures in order to avoid liability." Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1482 (9th Cir. 1997); Glasgow v. Georgia-Pacific Corp., 693 P.2d 708, 712 (Wash. 1985).
 
 
 34
 In this circuit, as in others, "remedies [for sexual harassment] should be `reasonably calculated to end the harassment.' " Ellison, 924 F.2d at 882 (quoting Katz v. Dole, 709 F.2d 251, 256 (4th Cir. 1983)); see also Glasgow , 693 P.2d at 712. The reasonableness of the remedy depends on its ability to: (1) "stop harassment by the person who engaged in harassment;" and (2) "persuade potential harassers to refrain from unlawful conduct." Ellison, 924 F.2d at 882. When the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment. Fuller, 47 F.3d at 1528-29.
 
 
 35
 Here, the district court concluded that, "upon notice of alleged sexual harassment, Azteca took appropriate remedial measures that were reasonably calculated to, and in fact did put an end to any harassment." In so ruling, the court relied on its single factual finding that "Azteca took action to remedy the situation" once Sanchez complained. The record belies the district court's conclusion. Azteca did nothing after Sanchez complained to his assistant and general managers.[10] Although Azteca took some action in response to Sanchez's May 1995 complaint, its remedy fell short.[11]
 
 
 36
 Following Sanchez's complaint, Azteca's human resources director told Sanchez to inform the Southcenter general manager if the offensive conduct recurred, and conducted a handful of spot checks in the two weeks after Sanchez complained. This solution did not remedy the harassment that had already occurred, and was not adequate to deter future harassment. The company made no effort to investigate Sanchez's complaint; it did not discuss his allegations with the perpetrators; it did not demand that the unwelcome conduct cease; and it did not threaten more serious discipline in the event the harassment continued. See Intlekofer, 973 F.2d at 780 (oral warning may be sufficient where employer expresses strong disapproval, demands that the harassment stop and threatens harsher discipline in the event the conduct does not cease). Moreover, by conditioning its response on Sanchez's reports of further harassment, Azteca placed virtually all of its remedial burden on the victimized employee. Although Azteca's request for a report regarding further harassment may have been well-meaning, and gave some support to Sanchez, this response was not sufficient. Cf. id. at 780 n.9 ("harassment is to be remedied through actions targeted at the harasser, not at the victim") (emphasis in original).
 
 
 37
 Title VII condemns "the existence of past harassment every bit as much as the risk of future harassment. " Fuller, 47 F.3d at 1529. The record establishes that, with respect to Sanchez and the harassment he suffered, Azteca failed to remedy the harassment and discipline those responsible for it. Because Azteca failed to meet its remedial obligations, we hold that the company is liable for the harassment by Sanchez's co-workers.[12]
 
 B. Harassment by Supervisors
 
 38
 In general, an employer is vicariously liable for a hostile environment created by a supervisor. Faragher, 524 U.S. at 780. However, when no "tangible employment action" has been taken, an employer may raise "an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). The affirmative defense has two prongs: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) "that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Whether the employer has a stated antiharassment policy is relevant to the first element of the defense. Id. And an employee's failure to use a complaint procedure provided by the employer"will normally suffice to satisfy the employer's burden under the second element of the defense." Id.
 
 
 39
 Sanchez claims that Azteca may not assert the affirmative defense because he suffered a tangible adverse employment action -namely, termination. See Ellerth, 524 U.S. at 761 (tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). We disagree. As discussed in Section V, below, Sanchez's termination was unrelated to any harassment or complaint thereof. Moreover, before being fired, Sanchez was not demoted or reassigned, and did not receive a cut in pay or benefits. Because Sanchez was not subjected to any tangible adverse employment action, we consider the merits of Azteca's affirmative defense.
 
 
 40
 As noted earlier, the first prong of the affirmative defense requires Azteca to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Ellerth, 524 U.S. at 765. Azteca showed that it acted to prevent sexual harassment generally, but not that it acted to correct promptly the harassment here. During all relevant time periods, Azteca had a written antiharassment policy that: (1) defined sexual harassment; (2) set forth a reporting procedure; (3) stated that employees who violate the policy will be disciplined; and (4) assured employees that no reprisals would be made against them "solely for making a complaint of sexual harassment." See Montero v. AGCO Corp., 192 F.3d 856, 862 (9th Cir. 1999) (finding a similar policy sufficient to support, in part, an affirmative defense). In addition, Azteca provided mandatory sexual harassment training for all of its employees. Sanchez acknowledges that he was aware of the company's antiharassment policy and attended the required sexual harassment training. Thus, we agree with the district court that Azteca's policy and company-wide training program were sufficient to show that it exercised reasonable care to prevent sexual harassment in its restaurants.
 
 
 41
 However, for the reasons discussed above in the context of co-worker harassment, we hold that Azteca did not exercise reasonable care to promptly correct the sexually harassing behavior directed at Sanchez, and therefore cannot assert the affirmative defense. Accordingly, we hold that Azteca is liable for the hostile environment created by its supervisor.[13] Because we conclude that Sanchez prevails on his hostile environment claim,[14] we need not consider his evidentiary objections, both of which relate to the exclusion of evidence in support of the hostile environment claim.
 
 V.
 
 42
 Finally, Sanchez contends that Azteca fired him in retaliation for opposing the harassment. The district court, however, found that Sanchez failed to establish a link between his harassment complaint and his discharge. Upon review of the record, we cannot conclude that this finding is clearly erroneous. See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (prima facie case of retaliation requires a showing of involvement in a protected activity, an adverse employment action, and a causal link between the two); see also Allison v. Housing Auth., 821 P.2d 34, 43 (Wash. 1991) (retaliation claim under WLAD requires proof that the employee engaged in a statutorily protected activity, that an adverse employment action was taken, and that the statutorily protected activity was a substantial factor in the adverse employment action). We therefore affirm the judgment of the district court with respect to Sanchez's retaliation claim.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 
 
 
 Notes:
 
 
 [1]
 We address the claims of Sanchez's co-plaintiffs, Michelle Nichols and Anna Christine Lizarraga, in an unpublished memorandum disposition filed concurrently with this opinion. See Nichols v. Azteca Restaurant Enters., Inc., No. 99-35579, 2001 WL 804002 (9th Cir. 2001).
 
 
 [2]
 Sanchez does not appeal the portion of the district court's judgment denying his claims for wage discrimination, negligent supervision, and negligent retention.
 
 
 [3]
 Each Azteca restaurant is managed by a general manager and one or more assistant managers, all of whom work under the direction of an area manager. Area managers, in turn, are responsible for several restaurants, and report directly to Azteca's corporate office.
 
 
 [4]
 Before Faragher, we used the following test to evaluate whether a work environment was hostile:
 (1) [whether the victim] was subjected to .. . verbal or physical conduct of a [harassing] nature, (2) [whether] this conduct was unwelcome, and (3) [whether] the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
 Ellison, 924 F.2d at 875-76 (citing Jordan , 847 F.2d at 1373). We have continued to cite this test in our decisions concerning hostile environment sexual harassment as it is consistent with the requirements for a hostile work environment set forth in Faragher. See, e.g., Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999).
 
 
 [5]
 Although we accept and defer to the district court's decision to give "greater credibility to the defense witnesses and their testimony," that determination has no bearing in the absence of conflicting evidence.
 
 
 [6]
 Sanchez specified the insults and slurs to which he was subjected. His failure to label the conduct of which he complained"sexual harassment" is irrelevant to the issue of whether he made a sexual harassment complaint.
 
 
 [7]
 We do not imply that all gender-based distinctions are actionable under Title VII. For example, our decision does not imply that there is any violation of Title VII occasioned by reasonable regulations that require male and female employees to conform to different dress and grooming standards.
 
 
 [8]
 The district court's finding that "Sanchez testified that the harassment was unrelated to his sex or gender," is clearly erroneous. Sanchez did not so testify.
 
 
 [9]
 There is no Washington state law authority regarding same-sex sexual harassment or harassment based on sex stereotyping. Absent such authority, we may reasonably hold that Sanchez established a hostile environment claim under WLAD as "decisions interpreting[Title VII] are persuasive authority for the construction of [WLAD]." Xieng v. Peoples Nat'l Bank, 844 P.2d 389, 392 (Wash. 1993).
 
 
 [10]
 Although these complaints did not follow the formal reporting requirements of Azteca's anti-harassment policy, they were sufficient to place the company on notice of the harassment. See Fuller, 47 F.3d at 1528. We recognize that an employer's organizational structure is relevant to determining the extent of its knowledge, but we conclude that Azteca's corporate structure is not so large as to make it impractical for managers to communicate with the corporate office about such important matters as harassment. Moreover, Azteca required both its assistant managers and general managers to report complaints and incidents of sexual harassment to the corporate office.
 
 
 [11]
 Indeed, in its brief to this court, Azteca made no argument regarding its efforts to promptly correct the harassment of which Sanchez complained.
 
 
 [12]
 Azteca contends that it should be absolved of liability because Sanchez failed to report any harassment after his May 1995 complaint. This argument is not a defense to liability in the face of an inadequate remedial response. It goes solely to the question of the extent of damages, which is a matter to be decided by the district court following remand.
 
 
 [13]
 The result under WLAD is the same, despite the fact that the standards for employer liability for supervisory employees under Washington state law may be in flux. In Glasgow, the Washington Supreme Court applied a negligence standard, holding that an employer is liable for a hostile work environment created by a supervisor if the employer"authorized, knew, or should have known of the harassment" and "failed to take reasonable prompt and adequate corrective action." 693 P.2d at 712. Recently, however, the Washington Court of Appeals applied the Faragher analysis to a hostile environment claim brought under WLAD. Sangster v. Albertson's, Inc., 991 P.2d 674 (Wash. Ct. App. 2000). The Washington Supreme Court has not yet considered this issue. Under either standard, Azteca would be liable for the supervisory harassment at issue here.
 
 
 [14]
 We intimate no conclusion whether Sanchez suffered damages as a result of his hostile work environment and, if so, the appropriate amount.
 
 
 
 44
 WARDLAW, Circuit Judge, concurring in part and dissenting in part:
 
 
 45
 I concur in parts I, II, III, IVA, and V of the majority opinion but respectfully dissent from part IVB. Unlike the majority, I believe that the district court correctly concluded that Azteca successfully established an affirmative defense to Sanchez's claims of a hostile work environment based on vicarious liability for the acts of its managers under Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). Azteca created and implemented the type of anti-harassment policy that Title VII was designed to encourage. See Shaw v. Autozone, Inc., 180 F.3d 806, 811 (7th Cir.), cert. denied, 528 U.S. 1076 (1999) ("Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms.") (quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 764 (1998)). First, Azteca took no tangible employment action against Sanchez. Second, Azteca had a written sexual harassment policy, which Sanchez admitted receiving, and required that employees attend sexual harassment training sessions, which Sanchez admitted attending. The policy instructs employees to take their complaints directly to corporate headquarters to ensure prompt, objective responses as well as to remove managers, who might be a part of the problem, from the complaint reporting process. Sanchez complained only once to Serna, the Human Resources Director, and it is unclear from the record whether, during that discussion, Sanchez specifically complained that, in addition to coworkers, his managers were involved in the harassment. Because the meeting culminated in a plan, agreed upon by Serna, Sanchez and the Southcenter General Manager Jose Sanchez, to address the complaint of harassment within the managerial structure of the restaurant, it would have been inherently contradictory for Sanchez to have complained of harassment by his managers during that meeting. Furthermore, although Sanchez was instructed to notify Serna if the solution did not work, he never did. Complaining to the restaurant managers of further name-calling was not only contrary to Serna's instructions and company policy, it was inherently unreasonable given Sanchez's claim that the managers themselves were participating in the harassment. Thus, Sanchez "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise," Faragher, 524 U.S. at 807, and Azteca cannot be held liable for Sanchez's failure to follow its publicized anti-harassment policy.