**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 20 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| REYNALD LAPUEBLA, | No. 22-16520 |
| Plaintiff-Appellant, | D.C. No. 1:19-cv-00097 |
| v. | |
| ALEJANDRO N. MAYORKAS, Secretary, U.S. Department of Homeland Security; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Guam
Michael J. Bordallo, Magistrate Judge, Presiding

Argued and Submitted February 12, 2024
Honolulu, Hawaii

Before:  PAEZ, M. SMITH, and KOH, Circuit Judges.
Dissent by Judge M. SMITH.

Reynald LaPuebla ("LaPuebla"), a U.S. Customs and Border Protection

("CBP") officer in Guam, appeals the district court's grant of summary judgment

in favor of Secretary Alejandro Mayorkas, the U.S. Department of Homeland

Security, and CBP (collectively, "the Agency").  LaPuebla sued the Agency for a

---

        [*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

hostile work environment under 42 U.S.C. § 2000e ("Title VII") after a colleague posted a photo of LaPuebla to a private Facebook group, where the colleague and other Agency employees proceeded to mock LaPuebla's perceived sexuality.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We vacate the district court's order granting summary judgment and remand for the court to (1) properly apply the inverse relationship between severity and pervasiveness, and (2) give further consideration to the agency's motion for summary judgment in light of our recent decision in *Okonowsky v. Garland*, --- F.4th ----, 2024 WL 3530231 (9th Cir. July 25, 2024).

*1. Inverse Relationship Analysis*. The district court erred in its framing and application of the inverse relationship between pervasiveness and severity. In a Title VII hostile work environment claim, a plaintiff must demonstrate that the harassment was "sufficiently severe or pervasive" as to "alter the conditions of [his] employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

In *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991), we held that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 878. This means that a single incident would need to be "extremely severe" to establish a violation of Title VII, and inversely, where there are many alleged incidents, each one need not

2

individually be as severe to establish a violation. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000).

Here, the district court determined that, even though "a reasonable jury could find that [LaPuebla's] claim of harassment arises from more than an 'isolated incident,'" given the online nature of the posted photos, "the issue of pervasiveness requires a unique approach due to the temporal ambiguity of interactions with Quenga's post." Purporting to apply this "unique approach" to the inverse relationship set out in *Ellison*, the district court held that it "would not matter" how pervasive or frequent the jury found the harassment to be, because "any increase in the number of incidents . . . would proportionally reduce the severity of each incident." The district court thus concluded that "a jury's finding of frequency given the facts presented would have a near zero-sum effect on the hostile work environment analysis."

The district court misapplied *Ellison*. No such "zero-sum effect" exists as a result of the inverse relationship between severity and pervasiveness. Instead, the relationship merely reduces a plaintiff's burden to demonstrate the requisite severity of each harassing incident, provided he can show that the harassment occurred with greater pervasiveness. *See Ellison*, 924 F.2d at 878. We accordingly remand for the district court to correctly apply the inverse relationship to LaPuebla's case.

3

*2. Okonowsky v. Garland*. In deciding the Agency's motion for summary judgment, the district court did not have the benefit of our recent decision in *Okonowsky*, 2024 WL 3530231. In *Okonowsky*, we dealt with a Title VII case involving sexually harassing social media content posted by the plaintiff's coworker. While this case and *Okonowsky* are not identical, they share some factual similarities. And *Okonowsky*'s reasoning bears directly on the issues presented in this case. Because neither the district court nor the parties had the benefit of *Okonowsky* when considering or briefing the summary judgment motion, we remand so the district court can apply *Okonowsky*'s holdings in the first instance. *See Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir. 2013) (en banc) (plurality opinion) ("A standard practice . . . is to remand to the district court for a decision in the first instance . . . . [O]ur general assumption is that we operate more effectively as a reviewing court than as a court of first instance."), *overruled on other grounds by Shinn v. Ramirez*, 596 U.S. 336 (2022); *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("Our judicial system generally assumes that consideration of an issue at both the trial court and appellate court level is more likely to yield the correct result, because the issue will be more fully aired and analyzed by the parties, because more judges will consider it, and because trial judges often bring a perspective to an issue different from that of appellate judges.").

The parties shall bear their own costs on appeal.

**VACATED AND REMANDED.**

*LaPuebla v. Mayorkas*, No. 22-16520

M. SMITH, Circuit Judge, dissenting:

Employers cannot, and should not, be held liable for the private conduct of their employees outside of work. In the online era, however, determining when outside-of-work conduct bleeds into the workplace, and thus creates a hostile work environment, is a difficult task. Our decision in *Okonowsky v. Garland*, --- F.4th ---, 2024 WL 3530231 (9th Cir. 2024), confirms that the district court drew the line in the appropriate place. Because I believe the actions in this case do not qualify as either severe or pervasive enough to constitute a hostile workplace environment and because the employer here took immediate corrective action, I respectfully dissent.

\*\*\*

To survive summary judgment, a hostile work environment claim under Title VII must "submit cognizable evidence sufficient to establish a jury question on whether the victim (1) was subjected to verbal or physical conduct of a sexual nature, (2) that was unwelcome; and (3) that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 996–97 (9th Cir. 2010) (citing *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)).

The Supreme Court "has cautioned that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

1

changes in the terms and conditions of employment.'" *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055–56 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Indeed, "Title VII is not a 'general civility code.'" *Prospect Airport Servs., Inc.*, 621 F.3d at 998 (quoting *Faragher*, 524 U.S. at 788). The district court concluded that, although LaPuebla "met his burden to show that he subjectively believed his work environment was hostile or abusive," he was unable to meet his burden to show that "the harassment was objectively offensive." I agree and would conclude based on well-settled precedent that this isolated incident did not surpass "simple teasing" as a matter of law.[1] *Id.*

First, the number of instances of harassment does not constitute a genuine issue of material fact. "Because only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (affirming grant of summary judgment for employer where male employee groped his female co-worker underneath her clothes against her will and vehement protest). This is true even if the behavior surpasses

---

[1] Even if the district court's "zero-sum" analysis were legally erroneous, we can affirm on any ground supported by the record. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1109 (9th Cir. 2024).

one singular incident. *See Mattioda v. Nelson*, 98 F.4th 1164, 1177 (9th Cir. 2024) ("Harassment is not sufficiently severe or pervasive to establish a hostile work environment where the conduct at issue consists of limited or isolated behavior.").

The harassment at issue here is limited enough to require extremely severe conduct to create a hostile workplace. The entirety of the alleged conduct took place over the course of less than one week.[2] In fact, we have only ever held that non-severe conduct constitutes a hostile work environment if the harassment takes place over the course of months, and in most cases, years.[3] *See Okonowsky*, 2024 WL 3530231, at *12 (genuine issue of material fact existed where perpetrator targeted plaintiff "on his Instagram account over a five-month period, often posting multiple times per day"); *Prospect Airport Servs., Inc.*, 621 F.3d at 996, 1000 (genuine issue

---

[2] The photograph was posted on Facebook at some point between April 4, 2016, and April 7, 2016. The post received 107 likes and 11 comments. LaPuebla found out about the post on April 7, 2016, from his co-workers, and "there was laughter." LaPuebla never saw the comments or emojis on the post prior to his deposition and testified that the post was taken down, at most, a week after it was posted. Quenga, the poster of the photograph, testified that he deleted the post on April 7, 2016. Quenga emailed LaPuebla apologizing for posting pictures of him without his permission on April 10, 2016. A week or two after the incident, Quenga approached LaPuebla in the bathroom and said, "Hey, Rey, can I talk to you?" but LaPuebla just "kept walking" and did not speak with him. LaPuebla does not allege any other contacts between himself and Quenga.

[3] And even when "isolated incidents . . . t[ake] place over a period of years," they do not make a work environment hostile. *See Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992).

of material fact existed where plaintiff faced "four or five months of harassment" followed by "six months of constant (and often daily) sexual pressure and humiliation"); *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1035 (9th Cir. 2005) (genuine issue of material fact existed where plaintiff testified that she experienced sexual and sexist comments every day over a five year period); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105 (9th Cir. 1998) (genuine issue of material fact existed where plaintiff experienced uncomfortable and humiliating sexual remarks "throughout the course of her employment" for a "period of two years").

Second, the severity of the conduct does not create a genuine issue of material fact because a reasonable jury could not conclude that the harassing conduct was sufficiently severe to create a hostile work environment.[4]  Because this conduct consists of, at the very most, a dozen or so comments over the course of one week, LaPuebla would need to prove that the incident is very severe.  It is not.

At the outset, there is nothing in the record that indicates that LaPuebla is actually homosexual or that Quenga or any of the commenters actually viewed LaPuebla as homosexual.  He was not mocked for his "perceived homosexuality,"

---

[4] In close cases, we only leave this assessment to the fact-finder "where the severity of *frequent* abuse is questionable." *Mattioda v. Nelson*, 98 F.4th 1164, 1176 (9th Cir. 2024) (quoting *Davis v. Team Electric Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008)).  As explained above, the conduct in this case could not be described as "frequent."

4

as the majority suggests. The comments are clearly teasing, do not use slurs, do not make threats, and include laughing emojis.

We have affirmed the grant of summary judgment for employers in cases where the commentary was objectively much more offensive. For example, in *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), we affirmed summary judgment for the defendant where he referred to one woman as a "regina," saying she "laughs like a hyena," another as a "castrating bitch," and women generally as "bitches" and "histrionics." *Id*. at 1107. In another case, we affirmed summary judgment where a perpetrator offered oral sex, stated that the victim had a "cute ass" and that "one experience of sexual intercourse with [the perpetrator] would be life-altering" because those comments were "simple teasing" and "insufficiently severe." *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005). And in another case, we held that a plaintiff of Chinese descent experienced only "simple teasing" where co-workers called a Chinese person a "China man," ridiculed the plaintiff for mispronouncing "Lima," and "upon seeing [plaintiff], pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003). These cases involve comments that target the *actual* identity of the victim and that could be perceived as displaying genuinely discriminatory intent. And yet,

our court held that there was no genuine issue of material fact about severity in any of them.

Inversely, the conduct in this case is nothing like the conduct in cases that we held could create a hostile workplace. Most recently, in *Okonowsky v. Garland*, a male co-worker targeted the plaintiff online with posts that contained: specific threats that the perpetrator and his male colleagues would "gang bang" the plaintiff, memes suggesting that the perpetrator wanted to shoot the plaintiff, derogatory images resembling her likeness, and suggestions of rape, physical harassment, and violence against women. 2024 WL 3530231, at *2–3. In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), the plaintiff was "forcibly subjected to sex-related, humiliating actions against him" on "several occasions," "physically assaulted . . . in a sexual manner," and "threatened . . . with rape." 523 U.S. at 77. Oncale testified that "if [he] didn't leave [his] job, that [he] would be raped." *Id.* And in *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), the plaintiff was "subjected to a relentless campaign of insults, name-calling, and vulgarities," where co-workers referred to him "as 'she' and 'her,'" mocked him for "walking and carrying his serving tray 'like a woman,'" and called him a "f****t" and "fucking female whore." *Id*. at 870. The abuse "occurred at least once a week and often several times a day." *Id.* Here, LaPuebla faced no threats or slurs of any kind.

6

Finally, the agency's response to the conduct clearly weighs in favor of summary judgment.[5] The district court appropriately focused on the agency's swift reaction after discovering the post. *See Okonowsky*, 2024 WL 3530231, at *10 ("In cases where the plaintiff has experienced . . . harassment outside of and unrelated to the workplace . . . that had a foreseeable, adverse impact on the plaintiff's working conditions, our focus in assessing the Title VII claim has centered on the employer's response to the offensive conduct." (cleaned up and internal quotations omitted)). "[B]ecause only an employer can change the terms and conditions of employment, that will rarely if ever be the case[] if the employer takes appropriate corrective action upon finding out about the harassment." *Prospect Airport Servs., Inc.*, 621 F.3d at 999. LaPuebla's employer verbally instructed Quenga to take down the post, sent him a Memorandum of Instruction to delete the post, followed up via email to ensure that the post was taken down, and eventually sent him a formal Letter of Reprimand. LaPuebla himself alleged that the post was taken down after he contacted management.

---

[5] Whether the harassment interfered with LaPuebla's work performance weighs in favor of reversing but not strongly. Although LaPuebla said he planned to surrender his badge because of the harassment, the district court noted that LaPuebla "has not alleged that the harassment impacted his performance at work." Even assuming the harassment interfered with LaPuebla's work performance, that does not affect the totality of the circumstances considering the objectively unoffensive nature of this conduct.

Given that this conduct was only mildly severe, occurred entirely within one week, and was immediately rectified by LaPuebla's employer, the district court arrived at the correct outcome in granting summary judgment.

***

"The conduct in this case is simply not of [the] order of magnitude" described in cases like *Okonowsky*, *Oncale*, *Brooks*, *Dominguez-Curry*, *Draper* or *Prospective Airport Services*. *Kortan*, 217 F.3d at 1111. Other than the significantly more severe conduct at issue in those cases, the only variance in this case is that it, in part, occurred on social media. But posting a photograph online does not turn simple teasing into workplace harassment. Our opinion in *Okonowsky* confirms that principle. For these reasons, I find it unnecessary to remand to the district court and respectfully dissent.

8