**Mario A. MENDOZA, Plaintiff,**

v.

**SYSCO FOOD SERVICES OF ARIZONA, INC., a Delaware for-profit corporation, Defendant.**

**No. CIV.02–1706–PHX–ROS.**

United States District Court,
D. Arizona.

Sept. 14, 2004.

Lynn M. Laney, Jr., Esq., Phoenix, AZ, for Plaintiff.

Mario A. Mendoza, Phoenix, AZ, pro se.

Charles L. Fine, Esq., Steven Gregory Biddle, Esq., Littler Mendelson PC, Phoenix, AZ, for Defendant.

## ORDER

SILVER, District Judge.

Pending before the Court is Defendant Sysco Food Services of Arizona, Inc.'s ("Sysco's") Motion for Summary Judgment. (Doc. # 17). Plaintiff is suing Sysco for employment discrimination based on national origin (Mexico) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and for retaliation for having opposed employment discrimination, in violation of 42 U.S.C. § 2000e–3(a). Also pending are Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment Statement of Facts (Doc. # 22), and Sysco's Motion to Strike Plaintiff's Supplement to His Response to Defendant's Motion for Summary Judgment (Doc. # 34).

## I. JURISDICTION

This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

### A. Factual Background [1]

Plaintiff is a current Sysco employee. [Doc. # 18, DSOF ¶ 1]. He was hired in July 1999 as an on-call order picker, became a full-time janitor in October 1999, and since October 2000 has been a produce delivery truck driver. [Id.]. Once Plaintiff became a full-time employee with Sysco, he was covered by a Collective Bargaining Agreement ("CBA") between his union (the Teamsters Local Number 104) and Sysco. [DSOF ¶ 2]. Although Sysco says it maintains company employment policies that prohibit harassment and discrimination and provide for reporting procedures (Id.), Plaintiff avers he has no recollection of being provided or seeing such policies (Doc. # 24, PSOAF, p. 13).

On February 21, 2002, Plaintiff filed a Charge of Discrimination ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC") alleging charges of discrimination on the basis of his sex and national origin, and a charge of retaliation. [Doc. # 1 (Compl.), Ex. B]. In his EEOC Charge Plaintiff alleged a number of offenses, including that: (1) on September 27, 2001, Plaintiff was subjected to racial and sexual slurs by a Sysco Dispatcher after Plaintiff had killed a rat at the Sysco warehouse; (2) that after Plaintiff filed a union grievance regarding the incident, the dispatcher retaliated against him by "pressuring [him] regarding his whereabouts on [his]

---

1. The facts are stated in the light most favorable to Plaintiff. Accordingly, citations are to the Complaint, to uncontested portions of Defendant's Statement of Facts, or to Plaintiff's Statement of Additional Facts. Defendant's Statement of Facts are designated "DSOF." Plaintiff's Statement of Additional Facts are designated "PSOAF."

routes on a continuous basis"; (3) that he had complained to Sysco's Human Resources Department about another driver who "complains to me when I leave the radio station on the Mexican channel after I have used the truck[,]" but that he did not think "Human Resources takes my complaints seriously"; and (4) that on November 23, 2001, Sysco's office manager made a derogatory comment about Plaintiff's ethnicity, and later apologized after Plaintiff complained, but that no disciplinary action against the office manager was taken. [Doc. # 1, Ex. B].

On March 12, 2003, Plaintiff executed a document entitled "Facts Supporting *Amended* Charge of Employment Discrimination" ("Supporting Facts")[2] in which Plaintiff stated that the Charge should be amended to omit the charge of sex discrimination and to allege only counts of discrimination based on national origin and retaliation for having protested such national origin discrimination. [Doc. # 24 (Pl.'s Decl. B); Doc. # 1, Ex. A]. In his Supporting Facts document, Plaintiff sets forth alleged incidents of discrimination and retaliation in greater detail than in the EEOC Charge, as follows.

### 1. Allegation of discrimination in drug testing

Plaintiff alleges that he was improperly selected to undergo a drug screening urinalysis two times in three months, when normally employees are screened only about once a year. [Doc. # 1 (Compl.), Ex. A, p. 1]. Plaintiff claims that when he returned to work from the 45–minute appointment at the testing lab, his supervisor, James Reeks, confronted him in front of co-workers, accused Plaintiff of taking too long, asked him if he had "peeing problems," and ordered him to "go off the clock" for his half-hour lunch period, which cost Plaintiff a half-hour of pay. [*Id.;*

Doc. # 24, p. 5]. Plaintiff declares that he returned later to the drug screening lab and obtained a statement explaining that the delay in processing Plaintiff's drug screen had been the lab's fault. [Doc. # 1 (Compl.), Ex. A, Att. 1].

### 2. The "Mexican Rat" incident

Plaintiff killed a rat in Sysco's warehouse on September 27, 2001. According to Plaintiff, a co-worker, Dispatcher Chuck Reynolds joked, to Plaintiff that he could picture him with a "Mexican hat and a moustache" "pounding the rat." [Doc. # 1 (Compl.), Ex. A, p. 1]. Later the same day, Plaintiff overheard Reynolds and another co-worker, Tony Pongas, talking about something that was in a folder Reynolds was holding, which Plaintiff was able to observe was "what looked like a computer generated cartoon[ ]" of a mouse wearing a Mexican hat and a large moustache, with several rats lined up behind it. [*Id.,* pp. 1–2]. Plaintiff declares that the rat and each rat behind it was apparently depicted engaging in an act of sodomy with the rodent in front of it. Plaintiff asserts it was clear to him that Reynolds and Pongas were speaking about him while looking at the cartoon. Plaintiff filed a complaint with Sysco's Human Resource Center on October 1, 2001, and a grievance through his union on October 4, 2001. [*Id.,* p. 2; Atts. 2 and 3]. Sysco conducted an investigation and gave Mr. Reynolds a two-day suspension without pay and a warning of more severe disciplinary action if a similar incident occurred. [DSOF ¶ 13; Ex. 10 (Notice of Suspension) ].

### 3. Plaintiff was not offered overtime

October 16, 2001 was a scheduled day off for Plaintiff. Sysco needed someone to work overtime that day, and did not offer the overtime to Plaintiff. [Doc. # 1

---

**2.** The record does not indicate whether Plaintiff filed this document with the EEOC.

(Compl.), Ex. A, p. 2]. Plaintiff's supervisor, Joe Calenda, offered the overtime instead to Greg Offi, an "Anglo" employee with less seniority than Plaintiff. Plaintiff states that he complained to Mr. Calenda, who told Plaintiff that he had intentionally passed him over for the overtime because Plaintiff had not been trained to take telephone orders. [*Id.*].

### 4. *Plaintiff was followed by a supervisor*

Plaintiff alleges that Sysco engaged in a pattern of scrutinizing Plaintiff more closely than other employees, commencing in November 2001. [Doc. # 1 (Compl.), Ex. A, p. 2]. He describes one specific instance of such scrutiny in which he was followed on his delivery route on November 10, 2001. [*Id.*]. Plaintiff contends that he was followed by a supervisor named "Alan, last name unknown," and that "Alan" checked Plaintiff's paperwork and truck after Plaintiff's last stop. [*Id.*]. "Alan" told Plaintiff he had followed him to "check up" on him and that "Alan" had been ordered to do so. [*Id.*].

### 5. *Joe Calenda's comments about Mexicans and the Holidays*

On November 23, 2001, Plaintiff's supervisor Joe Calenda inquired of Plaintiff about his December 2001 Holiday leave plans. [Doc. # 1 (Compl.), Ex. A, pp. 2–3]. Plaintiff asserts that after he advised Calenda that he would be back from vacation on December 22, 2001, Calenda remarked that "Mexican workers always go to Mexico for the Christmas holidays and never return until after the holidays," and that the only acceptable excuse Plaintiff could have for not returning on December 22 would be if there "was a bomb in Phoenix." [*Id.*]. Plaintiff complained to Sysco's Human Resource Center by a letter dated November 27, 2001, and a filed a grievance through his union on December 5, 2001. [*Id.*, Atts. 4 and 5]. During a meeting

regarding this issue between Plaintiff, Calenda, Mike McGuckin (Vice President of Human Resources of Sysco), and union steward Randy Saenz, Mr. Calenda admitted he had "made the anti-Mexican statements [Plaintiff] alleged" and apologized to Plaintiff. [PSOAF, p. 14]. Mr. Calenda, however, denied having any discriminatory intent. [Doc. # 24, p. 11].

### 6. *Change of Plaintiff's delivery route*

Plaintiff claims that on January 7, 2002, Sysco altered his delivery route "without any apparent reason" to add stops and change the order of his stops. [Doc. # 1 (Compl.), Ex. A, p. 3]. As a result, Plaintiff said he was criticized for taking too long on his route. He declares that he obtained relief only after he went to Sysco's Human Resources Center with his union steward and complained. Plaintiff does not explain exactly what relief he obtained.

### 7. *Sysco's threat to discipline Plaintiff for minor accident*

Plaintiff states that he had a minor accident, involving damage to another vehicle's exterior mirror, while parking his delivery truck on January 22, 2002. [Doc. # 1 (Compl.), Ex. A, p. 3]. After Plaintiff reported the incident, his supervisor, James Reeks, threatened to suspend Plaintiff the next time "something like that happened." Plaintiff concludes that Mr. Reeks's reaction was evidence of hostility and a retaliatory motive, because the collective bargain agreement between Sysco and Plaintiff's union requires that an employee cannot be suspended until after at least three documented incidents of accidental damages. [*Id.*].

### 8. *Sysco's failure to train Plaintiff*

Plaintiff complains that Sysco has failed to train him to take telephone orders and enter such orders by computer, which

would enable Plaintiff to obtain better work schedules and work overtime on weekends. [Doc. # 1 (Compl.), Ex. A, pp. 3–4]. He alleges he has asked for such training on numerous occasions, and that Sysco's refusal is both discriminatory and retaliatory. Plaintiff further alleges that three other employees with less seniority than he, including two Anglos and a Hispanic, have received the training in violation of policies contained in the CBA.

## B. Procedural Background

As noted, Plaintiff filed an EEOC Charge on February 21, 2002. [Doc. # 1 (Compl.), Ex. B]. The EEOC issued Plaintiff a Notice of Suit Rights on May 31, 2002. [*Id.*, Ex. C]. Plaintiff then filed the Complaint on August 30, 2002. [*Id.*]. On December 12, 2003, Sysco filed its Motion for Summary Judgment (Doc. # 17). When Plaintiff failed to file a response to Sysco's Motion for Summary Judgment, Sysco filed a Motion for Summary Disposition on January 26, 2004 (Doc. # 20), asking that the Court summarily grant the Motion. On February 13, 2004, Plaintiff filed a motion requesting an extension of time to file a response to Sysco's Motion for Summary Judgment, and responding to Sysco's Motion for Summary Disposition. [Doc. # 21]. Plaintiff filed his Response to Sysco's summary judgment motion on February 17, 2004 (Doc. # 23), after which Sysco filed its Reply on March 1, 2004 (Doc. # 25).

In an Order filed on June 3, 2004 (Doc. # 30), this Court denied Sysco's Motion for Summary Disposition and permitted Sysco to file a Reply to Plaintiff's Response to Sysco's Motion for Summary Judgment. Sysco filed its Reply (Doc. # 34) on June 14, 2004. The Court issued a Minute Order on June 23, 2004 vacating oral argument on Sysco's Motion for Summary Judgment. [Doc. # 32]. On July 26, 2004, Plaintiff filed, without leave of the Court, a pleading entitled Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. # 33) offering additional argument in light of the Ninth Circuit's opinion in *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840 (9th Cir.2004). Sysco then filed a Motion to Strike Plaintiff's Supplement. [Doc. # 34].

## III. LEGAL STANDARDS

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995). There is no issue for

trial unless there is sufficient evidence favoring the non-moving party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. However, because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge, ... [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

## B. Discrimination in employment in violation of Title VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer—... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff has alleged that Sysco has discriminated against him in violation of Title VII by subjecting him to disparate treatment and to a hostile work environment because of his national origin. Plaintiff further alleges that Sysco retaliated against him for opposing such unlawful discrimination. The legal standards for each such claim are set forth within the Court's analysis of each of Plaintiff's Title VII claims, below.

## IV. DISCUSSION

### A. Preemption / Collective bargaining agreement

Sysco argues that many of Plaintiff's allegations require interpretation of the CBA between Sysco and the Teamsters Local 104, and thus that the CBA provides Plaintiff's exclusive remedy, and results in preemption under the National Labor Relations Act of Plaintiff's Title VII claims. Sysco states that the CBA governs the terms and conditions of Plaintiff's employment, and that the CBA's grievance and arbitration procedure is the "exclusive remedy for employees covered by the Agreement for any issues relating to wages, terms and conditions of employment." [Doc. # 17 (Mot. for Summ. J.), p. 3]. Sysco further contends that Plaintiff's allegations regarding Sysco's discriminatory treatment of him regarding drug testing, overtime pay, route change, and a minor vehicle accident are each so preempted.

■ The rights Plaintiff asserts in this action do not arise out of the CBA, but rather out of the protections of Title VII against discrimination based on national origin. As the Supreme Court reasoned in *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 737, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." The Court further instructed that "in enacting Title VII, Congress had granted individual employees a nonwaivable, public law right to equal employment opportunities that was separate and distinct from the rights created through the 'majoritarian processes' of collective bargaining." *Id.* at 737–38, 101 S.Ct. 1437 (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). *See also Albertson's Inc. v. United Food & Commercial Workers Union*, 157 F.3d 758, 760 (1998).

In *Alexander,* the Supreme Court reasoned that

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

415 U.S. at 49–50, 94 S.Ct. 1011. More recently, the Supreme Court has concluded that even assuming that a union could waive "employees' statutory right to a judicial forum for claims of employment discrimination[,] ... the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 79–80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). Sysco does not allege that the CBA here includes such a waiver, and the sections of the CBA included by Sysco in the record does not evidence such a waiver.

Plaintiff's claims are based on violations of his rights pursuant to Title VII and are not preempted by virtue of the fact that certain of his claims refer to terms of his employment as set forth in the CBA.

## B. Plaintiff's Motion to Strike

Plaintiff has filed a Motion to Strike Portions of Defendant's Motion for Summary Judgment Statement of Facts. [Doc. # 22]. Plaintiff requests that the Court strike Defendant's Statement of Facts Paragraphs 17 and 18 in their entirety, and to strike selected language from Paragraph 19. Plaintiff complains that the statements at issue, based on the declaration of Sysco's Vice President for Human Resources, Michael McGuckin, are inadmissible for lack of foundation and because they are not based on McGuckin's personal knowledge. Sysco asks that the motion be denied. [Doc. # 31]. The Court rules as follows:

 **DSOF ¶ 17:** This statement reads:

> No one at Sysco has any knowledge whatsoever about any other complaints made by the Plaintiff mentioned in his pleadings. Specifically, Sysco does not have any knowledge that the Plaintiff complained to Human Resources about another driver who complained to him when he left the radio station on the Mexican channel after he used the truck. Additionally, no one at Sysco has any knowledge that the Plaintiff is pressured regarding his whereabouts on his routes on a continuous basis, and no one at Sysco believes that the Plaintiff has ever complained to Human Resources or any other management employee about this alleged conduct.

This statement is based on Mr. McGuckin's declaration. The Court concludes that Mr. McGuckin, as head of human resources at Sysco, is competent to testify that no one at Human Resources has knowledge that Plaintiff complained to that department about the radio station complaint. Mr. McGuckin has failed, however, to lay a foundation for the statements that *"no one at Sysco* has any knowledge whatsoever about any other complaints made by the Plaintiff mentioned in his pleadings[,]" and that *"no one at Sysco* has any knowledge that the Plaintiff is pressured regarding his whereabouts ... and *no one at Sysco believes* that the Plaintiff has ever complained to Human Resources or any other management employee about this alleged conduct." As Plaintiff argues, Mr. McGuckin does not establish that he could have personal knowledge about the knowledge or belief of each and every Sysco employee. Accordingly, the first

and third sentences of DSOF Paragraph 17 will be stricken.

**DSOF ¶ 18:** This statement reads:

The Plaintiff also claims that on November 10, 2001, a supervisor named "Alan," last name unknown, followed him. The Plaintiff claims that when he asked "Alan" why he was following, Alan responded that he had been told to do so. *See* Complaint. Again, there is absolutely no basis to the Plaintiff's allegation. He was not followed and no one had told "Alan" or any other Sysco manager employee to follow or check up on the Plaintiff. McGuckin Decl. ¶ 19. Moreover, Plaintiff again does not allege that this has anything to do with his national origin.

In this statement, only the fourth sentence includes a statement based on Mr. McGuckin's declaration that arguably lacks foundation. However, because McGuckin is head of the company's human resources department, the statement that "no one had told 'Alan' or any other Sysco manager [or] employee to follow or check up on the Plaintiff" may be reasonably considered as within his personal knowledge. Plaintiff's Motion will be denied as to Defendant's Statement of Fact Paragraph 18.

**DSOF ¶ 19:** Plaintiff complains that Sysco's statement that the Equal Employment Opportunity Commission "summarily" dismissed his Complaint "without even requiring Sysco to file a statement of its position . . . ." is without support in the record. In deciding the Motion for Summary Judgment, the Court has not relied on the language to which Plaintiff objects, and thus the Court need not decide whether that language is admissible.

**C. Disparate treatment claim**

Plaintiff alleges that Sysco discriminated against him on the basis of his national origin on the following grounds: by singling him out for drug testing, and his supervisor's remarks about how long one drug test took; because of a co-worker's "joke" directed at Plaintiff involving Mexican rats; by not offering him overtime that went to an Anglo employee with less seniority; by unduly scrutinizing his activities at work; because of his supervisor's comments about Mexican employees and Holiday vacation; by altering his delivery route; because of his supervisor's threat to discipline him for a minor accident; and because of Sysco's failure to train him to take telephone orders. Each allegation is analyzed in turn.

*1. Legal standard applicable to claim of Title VII disparate treatment*

The analysis of a disparate treatment claim under Title VII is governed by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. *See Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1126 (9th Cir.2001). If the defendant meets that burden, the Plaintiff must then show that the employer's purported reason for the adverse employment action is merely a pretext for a discriminatory motive. *Id.*

The plaintiff's prima facie case requires a showing that "give[s] rise to an inference of unlawful discrimination." *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). The plaintiff may establish a prima facie case by presenting direct evidence of discriminatory intent. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998); *see also Tempesta v. Motorola, Inc.,* 92 F.Supp.2d 973, 979–980 (D.Ariz.1999). Alternatively, a plaintiff can establish a prima facie case circum-

stantially, by meeting the four requirements outlined in *McDonnell Douglas:* the plaintiff (1) is a member of a protected class, (2) performed according to the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees outside his protected class. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1123 (9th Cir.2000) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Finally, "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII … claims on summary judgment is minimal and does not need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

At the pretext stage of the burden shifting analysis, "[a] plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Bodett v. Coxcom,* 366 F.3d 736, 743 (9th Cir.2004) (internal quotation marks and citations omitted). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin,* 150 F.3d at 1221. However, where plaintiff relies on indirect evidence to show that the defendant's stated motive is not the actual motive, "[s]uch evidence … must be 'specific' and 'substantial' in order to create a triable issue with respect respect to whether the employer intended to discriminate on the basis of [a prohibited ground]." *Id.* at 1222.

### 2. Allegation of discrimination in drug testing

As noted, Plaintiff alleges that he was improperly selected to undergo a drug screening urinalysis two times in three months, on June 20, 2001 and September 26, 2001. Plaintiff states that under the random selection process for drug testing, "each employee will be selected to go for a lab screen about once a year." [Doc. # 1 (Compl.), Ex. A, p. 1]. Additionally, Plaintiff claims that when he returned to work from the 45–minute appointment at the testing lab, his supervisor, James Reeks, confronted him in front of co-workers, accused Plaintiff of taking too long, asked him if he had "peeing problems," and ordered him to "go off the clock" for his half-hour lunch period, which cost Plaintiff a half-hour of pay. [*Id.;* Doc. # 24, p. 5].

■ This claim is not based on any direct evidence of discriminatory intent.[3] Accordingly, to establish a prima facie case of discrimination regarding this claim, Plaintiff must show that (1) he belonged to a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the protected class were treated more favorably. There is no dispute that Plaintiff is a member of a protected class. Also, although Plaintiff does not specifically allege that he was performing his job satisfactorily, the record supports such a conclusion as Plaintiff has remained employed by Sysco. Moreover, Plaintiff has sufficiently alleged that he suffered an adverse employment action by losing a half-hour of pay. *See Ray v. Henderson,* 217 F.3d 1234, 1241–42 (9th Cir.2000). However, Plaintiff fails to establish a prima facie case of disparate treatment because he has not alleged that similarly-situated employees not in his pro-

---

**3.** Direct evidence is evidence which shows discriminatory animus, without inference or presumption. *Costa v. Desert Palace, Inc.,* 268 F.3d 882, 885 (9th Cir.2001).

tected class were treated more favorably. Other than stating generally that the random drug selection process results in each employee being identified for drug screening about once a year, Plaintiff does not allege that he was treated differently than similarly-situated employees outside his class. Also, although Plaintiff states that Sysco employees are not required to "go off the clock" during their half-hour lunch break, he does not allege that other employees who had been absent from work for an extended period for drug testing or any other reason were not required to forego pay during their lunch breaks upon their return.

■ Even if Plaintiff had succeeded in establishing a prima facie case regarding this disparate treatment claim, the claim would fail. Sysco has articulated a legitimate nondiscriminatory reason for Plaintiff's selection for drug treatment twice in three months: that Sysco's drug screening is run by a third party (Medicine for Business and Industry) and that employees are selected randomly, based on non-identifying criteria by a computer software program, that "can result in an employee selection more often than another employee in the short term." [DSOF ¶ 4, Ex. 1 ¶¶ 7–8]. Plaintiff does not argue that Sysco's articulated reason for the drug testing is a pretext masking an actual discriminatory reason. Thus, Plaintiff has failed to allege that a discriminatory reason more likely motivated Sysco or to show that Sysco's explanation is unworthy of credence.

### 3. Plaintiff was not offered overtime.

Plaintiff complains that Sysco discriminated against him on October 16, 2001 when he was not offered the chance to work overtime, and instead an Anglo employee with less seniority was offered the overtime. Because this allegation includes no direct evidence of discriminatory intent,

the Court applies the four-part analysis to determine if Plaintiff has established a prima facie case of discrimination. As noted, Plaintiff has established the first two elements of the analysis. Additionally, because Plaintiff claims he was denied the chance to earn additional income, this allegation implicates an adverse employment action. See Ray, 217 F.3d at 1241–42. Finally, Plaintiff states, and Sysco concurs, that Greg Offi, an Anglo employee with less seniority than Plaintiff was called for the overtime opportunity instead of Plaintiff. [Doc. # 17, p. 5]. Plaintiff has established a prima facie case of disparate treatment.

Sysco offers a legitimate, nondiscriminatory explanation of why Plaintiff was passed over for the overtime. Sysco explains that Plaintiff was not trained to perform the work required, including taking telephone orders and inputting the orders in the automated system, while Mr. Offi was trained to do it. [Doc. # 17, p. 5]. Sysco states that "Mr. Offi's qualifications constituted the sole reason for his working the overtime that day, and the sole reason why Plaintiff was not called was due to his lack of qualifications." [Id.].

■ Plaintiff asserts that this explanation is not credible. He explains that the day in question, October 16, 2001, was a weekday, "when Sysco had clerical workers on duty to answer the phones and input the orders and does not use truck drivers [such as Plaintiff] to do such work (as opposed to weekends when drivers may do both driving and taking phone orders.) ... The skills that he had that I lacked were not needed for a week day." [Doc. # 24, p. 14]. Additionally, Plaintiff contends that he had requested the training needed to qualify him to take telephone orders and input them, but that Sysco had not granted those requests. [Doc. # 1 (Compl.), Ex. A ¶ 8]. Plaintiff's controverting allegation suggests that Sysco's expla-

nation is not credible, and is sufficiently specific and substantial to survive Sysco's Motion for Summary Judgment on this claim.

### 4. Change of Plaintiff's delivery route

■ Plaintiff alleges that Sysco altered his delivery route on January 7, 2002 "without any apparent reason" to add stops and change the order of his stops. [Doc. #1, Ex. A, p. 3]. Subsequently, Plaintiff alleges he was "criticized" for taking too long on his route, but that he obtained relief after he went to Sysco's Human Resources Center with his union steward and complained. This allegation does not contain direct evidence of discrimination, and so the Court applies the four-part *McDonnell Douglas* analysis. Plaintiff fails to establish the third and fourth elements of the analysis. Concerning the third element, Plaintiff has failed to show she suffered an adverse employment action, in that she obtained relief through Sysco's grievance procedure. *See Brooks v. City of San Mateo*, 229 F.3d 917, 929–30 (9th Cir.2000) (actions of employer to reschedule the plaintiff to an unfavorable shift and reject her vacation preferences were not final adverse employment actions for purposes of Title VII retaliation claim because after the plaintiff complained, the employer allowed the plaintiff to switch shifts and vacation dates with other employees). Regarding the fourth element, Plaintiff does not allege that similarly-situated employees not in his protected class were treated more favorably. Because Plaintiff fails to establish a prima facie case of disparate treatment, Sysco's Motion for Summary Judgment on this claim will be granted.

### 5. Plaintiff's remaining claims of discrimination based on disparate treatment

Plaintiff does not differentiate between his claims of discrimination based on dis-

parate treatment and those based on hostile work environment. As noted, Plaintiff alleges additional claims of discrimination including that he was followed while driving his route by a supervisor in November 2002, that his supervisor Joe Calenda made derogatory comments about Mexicans and the Holidays, that he was subjected to the "Mexican Rat" incident, and that Sysco threatened to discipline Plaintiff for a minor vehicle accident. Because none of these claims alleges an adverse employment consequence, none is a colorable claim for disparate treatment. Instead, these claims will be considered as claims for discrimination based on hostile work environment and for retaliation.

### D. Plaintiff's claims of discrimination based on hostile work environment

#### 1. Legal standard applicable to Title VII hostile work environment claim

■ A Title VII disparate treatment claim requires a plaintiff to prove an adverse employment consequence. In contrast, a Title VII hostile work environment claim is established when a plaintiff demonstrates that his work environment was so pervaded by harassment as to alter the terms and conditions of his employment. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. ... [They] occur[ ] over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

■ To prevail on a claim of hostile work environment based on national origin, a plaintiff must establish: "that he was subjected to verbal or physical conduct because of his national origin; (2) 'that the conduct was unwelcome'; and (3)

'that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.'" *Kang v. U. Lim America, Inc.,* 296 F.3d 810, 817 (9th Cir. 2002) (quoting *Gregory v. Widnall,* 153 F.3d 1071, 1074 (9th Cir.1998)). *See Morgan,* 536 U.S. at 116, 122 S.Ct. 2061 (" 'When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.' ") (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks omitted)).

 A court applies a totality of the circumstances test to determine whether a plaintiff has established a colorable claim of hostile work environment. *Brooks v. City of San Mateo,* 229 F.3d 917, 923 (9th Cir.2000) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Factors that are particularly relevant to that test include the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, or merely an offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Morgan,* 536 U.S. at 116, 122 S.Ct. 2061 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367). For example, in *Morgan,* the plaintiff presented evidence "that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets," which the Supreme Court held could all be part of the same hostile environment claim. *Morgan,* 536 U.S. at 120, 122 S.Ct. 2061.

### 2. Hostile work environment claims

Plaintiff alleges eight instances of discriminatory conduct on the part of his co-workers and supervisors. Again, these allegations are: (1) that Sysco discriminated against him by requiring him to be subjected to random drug testing twice in three months, and that a supervisor (Jim Reeks) docked him a half-hour of pay because Reeks thought Plaintiff's second drug test took too long; (2) he was subjected to co-workers' statements derogatory to his national origin after he killed a rat in the warehouse; (3) he was denied overtime by a supervisor (Joe Calenda) that was offered instead to an Anglo with less seniority; (4) he was followed on his delivery route by a supervisor; (5) Joe Calenda made derogatory comments to him about Mexicans failing to return to work during the Holidays; (6) his delivery route was altered without apparent reason to make it impossible for him to meet his delivery time requirements; (7) Jim Reeks threatened to discipline him for a minor vehicle accident in a manner that was inconsistent with Sysco policies; and (8) Sysco denied him training opportunities that were offered to less senior employees.

In addition, in his EEOC Charge of Discrimination Plaintiff alleged that he had complained to Sysco's Human Resource Center that another driver had told Plaintiff that he did not like Plaintiff leaving the truck's radio tuned to a Mexican channel. [Doc. # 1, Ex. B]. According to Plaintiff, this co-worker also "made other comments about [Plaintiff's] ethnicity." [*Id.*]. Plaintiff stated that he only complained once about this co-worker's remarks because he did not "think Human Resources takes my complaints seriously." [*Id.*]. Plaintiff did not include allegations about this co-worker in his Complaint.

Plaintiff filed written complaints with Sysco about the "Mexican rat" incident and being docked a half-hour's pay (Doc. # 1, Ex. A, Att. 2 (10/01/01 letter to Sysco's Human Resource Center)), and about

Joe Calenda's alleged comments regarding Mexicans and the Holidays (*Id.*, Ex. A, Att. 4 (11/27/01 letter to Sysco's Human Resources Center)). Additionally, Plaintiff asserts that he complained orally to Joe Calenda about being passed over for overtime and for Sysco's failure to train him. Plaintiff also asserts that he complained to Sysco's Human Resource Center with his union steward regarding his altered delivery route, and obtained relief. Plaintiff does not state that he complained in any manner about being followed by a supervisor or about Mr. Reeks' threat to discipline him for any additional vehicle damage.

3. *Whether Plaintiff has alleged a genuine issue of fact that his workplace would be considered hostile by a reasonable person of his national origin*

As noted, a working environment is "hostile" in violation of Title VII if, in light of all the circumstances, the "harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *McGinest*, 360 F.3d at 1113 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and citing *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir.2001)). A hostile work environment is not created when an employee is simply caused offense "based on an isolated comment." *Id.* (citing *Harris*, 510 U.S. at 21, 114 S.Ct. 367). But it is enough if hostile conduct "pollutes the victim's workplace, making it more difficult her [him] to do [his] job, to take pride in [his] work, and to desire to stay on in [his] position." *Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir.1994)). A plaintiff is required to establish that his

workplace was both objectively and subjectively hostile. *Nichols*, 256 F.3d at 871–72. It is clear from Plaintiff's complaints to Sysco and his EEOC Charge that he subjectively believed his work environment to be hostile, based on his national origin.

In objectively analyzing Plaintiff's allegations of harassment based on his national origin, the Court is guided by evidence of the frequency of discriminatory conduct, the severity of the conduct, whether the conduct consisted merely of offensive utterances or instead was physically threatening or humiliating, and whether the alleged conduct unreasonably interfered with Plaintiff's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367. As an initial matter, a number of the instances of harassment Plaintiff alleges do not implicate harassment based on Plaintiff's national origin.[4] These include: the circumstances surrounding Plaintiff's selection for random drug testing and Jim Reeks's subsequent comments that Plaintiff had taken too much time for the test; Plaintiff's allegation that he was followed by a manager named "Alan"; that his delivery route was altered without notice; Jim Reeks's threat to discipline him for any additional vehicle damage, and Sysco's failure to make available training on taking telephone orders and inputting such orders on the computer.

Although Plaintiff alleges mistreatment, he has failed to make any factual comparisons between himself and any co-worker not of his national origin. For example, Plaintiff does not allege a pattern of Sysco having drug tested workers of Mexican heritage (or any other protected group) more frequently than once per year. Similarly, he does not make allegations from which one may infer that Jim Reeks singled him out for criticism and docked him

---

4. Title 42 U.S.C. § 2000e–2(a)(1) requires that employment discrimination be "because of" the employee's "race, color, religion, sex, or national origin[.]"

lunch period pay because of his national origin, or that Reeks treated any other group of employees differently. Plaintiff's allegations concerning a supervisor "tailing" him while he drove his route one day, his route change, and Jim Reek's threat to discipline him for further incidents of vehicle damage do not include evidence that Plaintiff was being singled out due to his national origin, nor does Plaintiff allege that other workers outside of his protected class were treated any differently. Regarding Plaintiff's complaint that Sysco failed to train him to take telephone orders, Plaintiff does state that three other employees with less seniority than he had received such training. Of those three less senior employees, two were Anglo and one was Hispanic, a fact that tends to undercut Plaintiff's allegation of hostile working environment.

Plaintiff's allegations that implicate his national origin include: the Mexican rat incident involving Plaintiff's co-worker on September 27, 2001; Joe Calenda's comments on November 23, 2001 regarding Mexican employees' unreliability during the Holiday season; and his unidentified co-worker's statements complaining about the Mexican music channel. As noted, Plaintiff only alleged the last complaint to the EEOC, and did not re-allege this evidence in his Complaint. Moreover, he does not provide any specifics regarding when or how often his co-worker made such comments.

### a. Frequency of the alleged conduct

On September 27, 2001, Plaintiff's co-worker made the "Mexican rat" comment. Approximately a month later, on October 16, 2001, Plaintiff was passed over for overtime in favor of an Anglo employee with less seniority. Joe Calenda made his comment about Mexican workers on November 23, 2004. Plaintiff does not provide a time period for his allegation regarding his co-worker and the Mexican

radio channel, but seems to imply that the co-worker complained to Plaintiff about the radio more than once and made other racial slurs to Plaintiff. Thus, Plaintiff's allegations indicate that at least four alleged instances of discrimination based on his national origin occurred within a period of five months.

### b. Severity of the alleged conduct

Plaintiff alleges that Chuck Reynolds commented to Plaintiff about Plaintiff's having killed a rat, stating as a "joke" that "he could picture [Plaintiff] with a 'Mexican hat and moustache' pounding the rat." This comment took on greater meaning for Plaintiff later that day when:

> Mr. Reynolds had taken a folder from his briefcase and showed it to Mr. Pongas, Quality Control Worker. Mr. Reynolds was hiding a folder from me, until it fell into my hands. I was shocked to find what the folder contained. It contained a picture of a mousetrap with a dead rat and its pants were off. Behind the rate were some other rats having sex with it and themselves. I felt that this joke was directed toward myself as he felt he could not share it with me, nor would I want to see it under normal circumstances.

[Doc. # 1, Ex. A, Att. 2 (Pl.'s 10/01/2001 letter to Sysco's Human Resource Center)]. Plaintiff also alleged that when Mr. Reynolds showed the cartoon to Mr. Pongas, he commented to the effect that "here is [Plaintiff] killing the rat." [Id.]. Construing Plaintiff's allegations in the light most favorable to him, the Court finds that the initial comment by Mr. Reynolds was in bad taste, and was personally offensive to Plaintiff. The comment in conjunction with the distasteful cartoon, however, amplified the comment's offensiveness. It is significant, however, that Plaintiff has stated that Reynolds did not direct the cartoon

at Plaintiff; he did not want to share the cartoon with Plaintiff, and Plaintiff only viewed the cartoon when it slipped from the folder in which Reynolds had kept the cartoon hidden from Plaintiff.

Additionally, Plaintiff alleged that Joe Calenda told him that "Mexican workers always go to Mexico for the Christmas holidays and never return until after the holidays." This statement is reasonably construed as Plaintiff construed it: that Mexican employees, including Plaintiff, cannot be relied on to return to work on time during the holiday season, and will lie about their actual intentions. The statement incorporates a derogatory stereotype based on national origin. The alleged statement was patently offensive, and Plaintiff took offense to it.

In contrast, the Court does not view the unidentified co-worker's complaints that Plaintiff left his radio tuned to a Mexican station to be highly offensive. Based on the Plaintiff's bare assertions, it is unclear whether there was evidence of racial animus or simply a difference in musical taste. Although Plaintiff states that the co-worker "made other comments about my ethnicity," Plaintiff does not say what those comments were.

### c. Whether the alleged conduct was objectively physically humiliating or merely an offensive utterance

The first two allegations of harassment based on national origin Plaintiff alleges involve offensive utterances. Plaintiff's allegation concerning the "Mexican rat" cartoon was derogatory because the initial statement was based on a stereotypical caricature of a Mexican (a character with a sombrero and moustache), made more offensive when the cartoon is considered. Joe Calenda's alleged statement about Mexicans and the holidays was also based on a derogatory stereotype and was accordingly offensive. Moreover, Plaintiff

has alleged that Mr. Calenda warned him that the only excuse for Plaintiff's not returning to work on the day promised would be "a bomb in Phoenix," lending credence to Plaintiff's complaint that Calenda did not believe Plaintiff when Plaintiff said he would return on that day. Without any details of Plaintiff's co-worker's complaints about the Mexican radio station, even viewing the allegation in a light most favorable to Plaintiff, the Court cannot conclude that such complaints were objectively offensive let alone physically humiliating.

While Plaintiff's allegations undisputably involved offensive comments, they do not implicate physical threats or humiliation.

### d. Whether the alleged comments interfered with Plaintiff's work performance

Plaintiff asserted in his EEOC Charge that "I am finding it very stressful to perform my job in such a[sic] ethnically ... offensive environment." [Doc. # 1, Ex. B, p. 2]. Plaintiff, however, offers no evidence that his work performance actually declined as a result of the alleged harassment.

### e. Analysis

In analyzing Plaintiff's claim that he was subjected to a hostile work environment, the Court is guided by the Ninth Circuit's recent decision in *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir.2003). In *Vasquez*, the plaintiff alleged a hostile work environment based on race when a manager made two derogatory statements to the plaintiff during a six-month period. The statements were that the plaintiff had "a typical Hispanic macho attitude," and that the plaintiff should transfer to a field position because "Hispanics do good in the field." *Vasquez*, 349 F.3d at 643. The plaintiff also alleged other instances of

harassment by the manager not implicating the plaintiff's race that occurred over a year's time. The court compared the facts presented by the plaintiff with those asserted in several previous Ninth Circuit cases, and concluded that the plaintiff had not alleged events "severe or pervasive enough to violate Title VII." *Id.*

The Ninth Circuit first examined the facts of *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir.1990), in which that court held that "no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino." *Vasquez*, 349 F.3d at 643. The court noted that the facts alleged in *Sanchez* were at least as "severe" as those in *Vasquez*, but that no hostile work environment was found as a matter of law.

Next, the Ninth Circuit compared the plaintiff's allegations to those presented in *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir.1998) and *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir.2001). In *Draper*, the court held in a sexual harassment case [5] that the defendant had created a hostile work environment "where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, calling her 'gorgeous' and 'beautiful' rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her 'ass,' and asking over a loudspeaker if she needed help changing clothes." *Vasquez*, 349 F.3d at 643.

In *Nichols*, the court similarly found that defendant had created a hostile work environment where "a male employee ... was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of 'faggott' and 'fucking female whore' by male co-workers and supervisors at least once a week and often several times a day." *Vasquez*, 349 F.3d at 643. The court contrasted its holding of hostile work environment under the facts of *Draper* and *Nichols* with those in *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir.2000), in which the court held there was no hostile work environment when:

> a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor. The court held that, while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment.

*Vasquez*, 349 F.3d at 643–44. Considering the facts in *Vasquez* in light of those presented in *Kortan, Nichols, Draper*, and *Sanchez*, the Ninth Circuit held that the offensive conduct alleged by Vasquez did not create a hostile work environment. The court noted that the alleged harassing incidents were spread over the course of more than one year, and that only two involved racial epithets. The court found the offensive conduct more in line with that at issue in *Kortan*, and "less frequent, less severe, and less humiliating than the conduct at issue" in *Nichols* and *Draper*. *Id.* at 644.

---

**5.** The Ninth Circuit noted that "[b]ecause the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant to our analysis." *Vasquez*, 349 F.3d at 642.

The facts alleged by Plaintiff here, even when viewed in a light most favorable to Plaintiff, fail to raise genuine issues of material fact sufficient to support Plaintiff's claim of a hostile work environment. In comparison to the facts in *Vasquez* and *Kortan*, Plaintiff's allegations of discrimination are approximately as frequent. In each of those cases, the offensive conduct was that of one supervisor, and in *Kortan*, the offensive conduct "was concentrated on one occasion." *Kortan*, 217 F.3d at 1111. Here, Plaintiff has alleged offensive conduct based on his national origin by one supervisor, Joe Calenda, although the conduct by Mr. Calenda might be viewed as more offensive than the supervisors' comments in either *Vasquez* or *Kortan* because Calenda's comments were directed to Plaintiff's truthfulness based on his national origin.

The Court notes that the facts here are clearly much less offensive and frequent those alleged in either *Nichols* or *Draper*. Plaintiff's allegations are isolated incidents, rather than, for example, the "unrelenting barrage of verbal abuse" alleged in *Nichols*. Chuck Reynold's initial comment, taken in the context in which it was made, was in the nature of co-workers' teasing, and Plaintiff has testified that he viewed Reynolds's cartoon later that day against Reynolds's apparent wishes. Joe Calenda's comment to Plaintiff about the reliability of Mexican employees at the holiday season was clearly offensive, but was isolated. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Under the totality of the circumstances, and in view of the Court's conclusion that Plaintiff's circumstances are much more analogous to those in *Vasquez* and *Kortan* than those presented in either *Nichols* or *Draper*, Plaintiff has failed to sufficiently allege that the conduct complained of was persistent or severe enough to alter the conditions of his employment.

## E. Retaliation claim

### 1. Legal standard applicable to Title VII retaliation claim

Title VII prohibits retaliation against an employee for opposing a discriminatory employment practice. 42 U.S.C. § 2000e–3(a). To prevail on a Title VII retaliation claim, a plaintiff must establish a prima facie case, showing that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there exists a causal link between the protected activity and the adverse employment decision. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir.1994). Once a plaintiff sets forth a prima facie retaliation case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the defendant can articulate such a reason, the burden shifts back to the plaintiff to show that the reason was a pretext for a discriminatory motive. *Id.*

Plaintiff argues he engaged in protected activity by submitting a letter complaint to Sysco's Human Resource Center dated October 1, 2001, in which he complained about "possible racial harassment" regarding the Mexican rat incident, and also complained about his treatment by Jim Reeks regarding Plaintiff's drug test. [Doc. # 1 (Compl.), Ex. A, Att. 2]. Plaintiff's filing of the October 1, 2001 complaint is a protected activity under 42 U.S.C. § 2000e–3(a). *See Ray*, 217 F.3d at 1240. Sysco does not dispute this conclusion.

### 2. Adverse employment action

Plaintiff contends that the events, also discussed above, represent adverse em-

ployment actions: that Sysco passed him over for overtime on October 16, 2001; that he was followed by "Alan" on November 10, 2001; Joe Calenda's comments to him about his vacation leave; Sysco's sudden alteration of Plaintiff's route; Jim Reeks's threats to discipline him for a minor traffic accident; and Sysco's training of less senior employees in violation the collective bargaining agreement.

The Ninth Circuit "defines adverse employment action broadly." *Ray*, 217 F.3d at 1240. Examples of adverse employment action include a lateral transfer, transfers of job duties, undeserved performance ratings, dissemination of an unfavorable job reference, exclusion from opportunities for salary increases, and being given a more burdensome work schedule, but do not include "mere ostracism" by coworkers. *Id.* at 1240–41. As examples of adverse employment actions recognized by other circuit courts that are in line with the Ninth Circuit view, the *Ray* court listed changing an employee's schedule without notification, and making negative comments about her. *Id.* at 1241–42 (citing *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)). The court concluded that the test for an adverse employment action in the EEOC Compliance Manual was in line with prior Ninth Circuit holdings and adopted it. *Ray*, 217 F.3d at 1243. The EEOC definition of an adverse employment action is, "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Id.* at 1242. Put somewhat differently, the court has explained that "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Brooks*, 229 F.3d at 928. "This definition includes actions 'materially affect[ing] compensation, terms, conditions, or privileges' of employment." *Lit-*

*tle v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir.2002) (citing 42 U.S.C. § 2000e–2(a)(1); *Kortan*, 217 F.3d at 1109). In *Brooks*, the Ninth Circuit also explained that employment actions are not adverse when they are subject to reversal on appeal to the employer, such as initially giving a complaining employee an unfavorable shift and denying her vacation preference, but later allowing her to switch shifts and vacation dates with other employees. *Id.* at 930.

Plaintiff's allegations of retaliation are discussed in turn. The analysis of each allegation assumes that Plaintiff has established the first element of the prima facie case, that Plaintiff had engaged in a protected activity when he filed his October 1, 2001 letter complaint to Sysco.

### 3. Overtime

Plaintiff has alleged he suffered a retaliatory adverse employment action when he was passed over for overtime on October 16, 2001. This allegation involves an action materially affecting Plaintiff's compensation that could affect a reasonable person's decision to engage in protected activity; thus it qualifies as an adverse employment action. *See Little*, 301 F.3d at 970. Because this allegation involves actions by Sysco that occurred only about two weeks after Plaintiff filed his complaint, a causal link between the complaint and the alleged retaliation may be inferred. *See id.* (citing *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir.2000), noting that causation may be inferred solely from the timing of the adverse actions; *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir.1989), where a prima facie case was established when the adverse employment actions occurred 42 and 59 days after EEOC hearings; and *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.

1987), where adverse actions followed complaint by less than three months).

 Sysco provides a legitimate, non-discriminatory reason for this action. As noted, Sysco has explained that Plaintiff was not qualified for the overtime because he had not been trained to take telephone orders and input such orders into the company's computer system. However, as is also discussed above, Plaintiff has offered specific and substantial evidence that this reason is pretextual, explaining that the day he was passed over for overtime was a week day when clerical staff was available and expected to take telephone orders. Plaintiff's allegation presents factual issues on this claim sufficient to survive summary judgment.

### 4. Being followed on his route by "Alan"

 Plaintiff has alleged that "starting in November, 2001, I noticed a pattern of being closely scrutinized by supervisors, more closely than I had been watched before these incidents, and much more closely scrutinized than other employees." [Doc. # 1 (Compl.), Ex. A, p. 2]. Plaintiff further explained that on November 10, 2001, he was followed on his route by "Alan," a Sysco supervisor, who checked Plaintiff's paperwork and inspected his truck after Plaintiff's last stop. [*Id.*]. Plaintiff alleges that "Alan" told him he had been "ordered" to check up on Plaintiff. This allegation, under the Ninth Circuit analysis, does not itself qualify as an adverse employment action. It may, however, serve as evidence of pretext for any post-complaint discipline because surveillance "strongly suggests the possibility of a search for a pretextual basis for discipline, which in turn suggests that subsequent discipline was for purposes of retaliation." *Yartzoff*, 809 F.2d at 1377 (citation and internal quotation marks omitted). Plaintiff, however, does not allege that he

suffered any disciplinary actions after he filed his complaint. Thus, summary judgment will be granted on this claim.

### 5. Vacation leave

 Plaintiff complains that he subjected to unwarranted questioning by supervisor Joe Calenda about his expected return date from holiday vacation on December 21, 2001. Although it can be inferred that denying an employee's vacation preference is an adverse employment action, *see Brooks*, 229 F.3d at 930, Plaintiff has only alleged that his supervisor questioned whether Plaintiff would, in fact, return when scheduled. This allegation does not present an adverse employment action; summary judgment is there appropriate.

### 6. Alteration of Plaintiff's route

 Plaintiff complains that on January 7, 2002, his route was suddenly altered such that he had greater distances to travel, but in the same amount of time, thus making his job responsibilities more burdensome. Without more, this would qualify as an adverse employment action. *See Ray*, 217 F.3d at 1241 (imposing a more burdensome work schedule is an adverse employment action). However, Plaintiff also explains that he obtained relief after he went to Sysco's Human Resources Center with his union steward and complained. Because this action was reversed on Plaintiff's complaint, it was not final and does not qualify as an adverse employment action. *See Brooks*, 229 F.3d at 929–30. Accordingly, summary judgment will be granted on this claim.

### 7. The minor vehicle damage

 On January 22, 2002, Plaintiff damaged another truck's exterior mirror while parking on his route. When Plaintiff reported it to supervisor Jim Reeks, Reeks became angry and told Plaintiff that Reeks

would suspend him the next time something like that happened. Plaintiff states that ordinarily such events are not punished if the incident is accidental, and that the collective bargaining agreement requires three accidental damage events before a driver can be suspended. [Doc. # 1 (Compl.), Ex. A, p. 3]. Plaintiff does not allege that he was disciplined, or suffered any adverse impacts other than being subjected to the angry threat made by a supervisor. This allegation also does not amount to an adverse employment action, and summary judgment on this claim will be granted.

### 8. Failure to train

 Plaintiff contends that he was retaliated against because he has repeatedly requested, and been refused, training to learn how to take telephone orders and key the orders into the computer. This training would qualify him for overtime work on week-ends. He further alleges that three employees with less seniority, two Anglos and one Hispanic. have been trained in violation of the collective bargaining agreement. Exclusion "from meetings, seminars and positions that would [make and employee] eligible for salary increases" is an adverse employment action. *Ray,* 217 F.3d at 1234. The Court concludes that Plaintiff's allegation of exclusion from training that would qualify him for overtime similarly describes an adverse employment action. Further, as is explained above, the proximity in time between Plaintiff's allegations of adverse employment action and his complaint are sufficient to establish a causal connection. Plaintiff does not state exactly when he requested training. However, as is discussed above, he alleges he was passed over for overtime on October 21, 2001 in favor of Greg Offi, a less senior employee who had received training. Construing this evidence in a light most favorable to Plaintiff, the Court infers that Plaintiff's alleged "repeated" unfulfilled requests followed his complaint.

 Sysco offers a legitimate, nondiscriminatory reason for not training Plaintiff, stating that, in fact, it set up the training for Plaintiff but Plaintiff failed to attend. [Doc. # 18 (DSOF), ¶ 9]. Plaintiff disputes this statement. [Doc. # 24, p. 8]. Evidence of proximity in time between the adverse employment action and the protected complaint may also be used to establish pretext. *Little,* 301 F.3d at 970; *Yartzoff,* 809 F.2d at 1377. In addition to the close proximity between Plaintiff's complaint and Sysco's alleged refusal to train Plaintiff, Plaintiff has submitted that Sysco's reason for offering overtime to the less senior employee, Greg Offi, itself was not credible because Offi's additional training was not needed on the day Offi was granted the overtime instead of Plaintiff. This evidence also serves to discount the credibility of Sysco's explanation for not training Plaintiff. Summary judgment will be denied on this claim.

### F. Sysco's Motion to Strike Plaintiff's Supplement to His Response

On July 26, 2004, Plaintiff filed a Supplement to Plaintiff's Response to Defendant's Motion for Summary Judgment, ostensibly to address in this matter the holdings of the Ninth Circuit in its recent decision in *Fonseca v. Sysco Food Services,* 374 F.3d 840 (9th Cir.2004), filed on July 6, 2004. [Doc. # 33]. The plaintiff in that matter is a co-worker of Plaintiff's, and the defendant in that matter is the Defendant here. Sysco filed a Motion to Strike Plaintiff's Supplement on August 04, 2004. [Doc. # 34].

Briefing on Sysco's Motion for Summary Judgment was completed when Sysco filed its Reply on June 14, 2004. By minute entry dated June 23, 2004 (Doc. # 32), the Court vacated oral argument on Sysco's

Motion to Dismiss, and advised the parties that a separate order would issue at a later date with the Court's ruling. As an initial matter, the Court notes that because the deadlines for filing responsive under the Federal Rules of Civil Procedure and the Rules of Practice of the United States District Court for the District of Arizona have passed, Plaintiff is required to request leave of the Court to file supplemental briefing. Plaintiff has not done so. Further, the Ninth Circuit decision in *Fonseca* addresses the parties' arguments in an entirely separate matter that presents a distinct and separate set of facts. The decision is not dispositive on the factual disputes in this matter, but may provide guidance on legal issues. Therefore, the Court will grant Sysco's Motion to Strike Plaintiff's Supplement, but will treat Plaintiff's Supplement as a notice of supplementary authority.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment Statement of Facts (Doc. # 22) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant Sysco's Motion for Summary Judgment (Doc. # 17) is **GRANTED** as to Plaintiff's claims of disparate treatment concerning drug testing, the change in his delivery route, being followed by a supervisor, his supervisor's comments regarding Mexicans and Holiday work attendance, the "Mexican rat" incident, and the threat to discipline Plaintiff for minor vehicle damage; and is **DENIED** as to Plaintiff's claims of disparate treatment concerning being passed over for overtime work and Sysco's failure to train him.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 17) is **GRANTED** as to Plaintiff's hostile work environment claim.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 17) is **GRANTED** as to Plaintiff's retaliation claims involving being followed by a supervisor, Joe Calenda's comment regarding holiday vacation, the alteration of Plaintiff's delivery route, and Plaintiff's supervisor's threat to discipline him for minor vehicle damage; and **DENIED** as to Plaintiff's retaliation claims concerning overtime and Defendant's failure to train him.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Supplement to His Response to Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties are to prepare a Joint Proposed Pretrial Order by November 15, 2004, including motions *in limine,* a jointly proposed statement of the case, and jointly proposed voir dire questions. The parties shall submit either individually five (5) additional voir dire questions or collectively ten (10) jointly proposed voir dire questions. The parties are directed to the Court's website at www.azd.uscourts.gov (under "Judge Information/ Orders, Forms, & Procedures") for copies of the forms. Responses to motions *in limine* are due on December 10, 2004. No replies are permitted to the motions in limine. The Final Pretrial Conference will be held on January 14, 2005 @ 1:30 pm.